Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

Brianna Beaudoin, individually and on behalf of a class of all persons and entities similarly situated,

    Plaintiff

vs.

Approved Colleges, LLC
d/b/a Emma

    Defendant.

Case No. 3:25-cv-2171

CLASS ACTION COMPLAINT
TCPA (47 U.S.C. § 227)
DEMAND FOR JURY TRIAL

**PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff Brianna Beaudoin ("Plaintiff"), by his undersigned counsel, for this class action complaint against Approved Colleges, LLC d/b/a Emma ("Defendant"), as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, as applicable, and alleges as follows:

**INTRODUCTION**

1. <u>Nature of Action</u>: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion

1

Complaint

and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network*, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

    2.   "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 649-50.

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls, including text messages, to numbers on the National Do Not Call Registry, including her own.

4. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant, as well as those individuals who had previously asked to no longer receive calls.

## PARTIES

5. Plaintiff has a 971- area code telephone number associated with this District, in Multnomah County.

6. Defendant is a marketing company for colleges that is located in Virginia.

## JURISDICTION AND VENUE

7. <u>Jurisdiction</u>: This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

8. The Court has specific personal jurisdiction over Defendant because Defendant directed its conduct into Oregon by texting individuals with Oregon telephone numbers, including those, like Plaintiff, possessing 971- area code numbers, which are associated with this District.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were sent into this District.

**FACTS**

A.  **The Enactment of the TCPA and its Regulations**

10.  In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

11.  Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

12.  The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13.  A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

14.  The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

B.  **The TCPA Requires Entities To Have Sufficient Policies in Place To Prevent Unwanted Calls Before Making Telemarketing Calls**

15.  The TCPA specifically required the Federal Communication Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

16.  The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .)" and "develop proposed regulations to implement the methods and procedures that the Commission

Complaint

4

determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E). Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

17. These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

18. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do not call list, train personnel engaged in telemarketing on the existence and use of its internal do not call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

19. This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

**C.    The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name**

20. The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

21. The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

22. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v.*

Complaint

5

*Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

**Unsolicited Telemarketing to Plaintiff**

23. Plaintiff is, and at all times mentioned herein was, a "person."

24. Plaintiff's cellular telephone number, (971) XXX-XXXX, is a telephone number that is used for residential purposes.

25. Plaintiff uses the telephone number for her own personal, residential, and household needs and reasons.

26. For example, Plaintiff uses the number to communicate with friends, family, and acquaintances, time household tasks, such as cooking, and for navigation while running household tasks.

27. The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

28. Plaintiff, like many people, no longer maintains any other residential telephone number, like a landline number. As such, the number at issue is her only residential telephone line.

29. The telephone number is the primary means of reaching Plaintiff at her residence.

30. Plaintiff's number has been on the National Do Not Call Registry since she registered it on the Registry on February of 2009, well prior to receiving the text messages at issue.

31. Despite that, Plaintiff received at least eleven telemarketing text messages from the phone number 857-239-0116 between at least March 15 and present.

Complaint

32. At least three of those text messages were sent after the Plaintiff told the Defendant she was not interested.

33. The text messages all were sent to advertise degree programs offered by Defendant Approved Colleges, LLC's colleges for which it was hired to market and advertise for, including Fisher College, under what appears to be a so-called "white label" or "co-branding" arrangement.

34. As such, the messages were directly sent by Defendant.

35. The Plaintiff responded "no" to a message on March 28, 2025, but the messages continued, as reproduced below:



Complaint

7

36. Thereafter, the plaintiff continued to receive text messages, to which she responded "no" and that she was not interested, but continued to receive messages:



37. Some of the messages contained a link to https://go.oncehub.com/FisherLoriSisk, which makes clear that the sender, Lori Sisk, has an email address with the *Defendant's*, not Fisher College's, domain, and a website which is co-branded with Fisher College:



Complaint

8

38. Fisher College's website links appear nowhere on this website.

39. Indeed, visiting the website www.applywithemma.com/info contained in the very website texted to the Plaintiff and signing up at that link shows educational offerings not only from Fisher College but also other educational opportunities for which Defendant has been hired to advertise and co-brand:



40. The text messages all came from the 857-239-0116 number. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendant's calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of that dip is as follows:

Complaint

9

| Number | Date of Query | CNAM Available? | CNAM Result | Carrier |
|---|---|---|---|---|
| 8572390116 | 19/11/2025 | Y | BOSTON MA | TWILIO |

41.     As the aforementioned chart shows, the CNAM transmitted by the Defendant's ultimate telephone carrier, Twilio, provided CNAM functionality, but the CNAM functionality transmitted a geographic location, and not the Defendant's name or telemarketer's name.

42.     Twilio provides its customers and any resellers the ability to set the CNAM result accurately to reflect their own name as desired, but if the customer does not elect such a CNAM, Twilio's default CNAM customer setting is to transmit the geographic location of the telephone exchange for the calling telephone number, and not the caller's name, as occurred here.

43.     This telephone number does not permit a caller to call the number and lodge a do not call request during regular business hours, instead stating that the office is closed until January. It is not possible to call the number back to lodge a Do Not Call request during regular business hours.

44.     As the Plaintiff demonstrated, it is also not possible to text the number back to lodge a do not call request.

45.     Nor will anybody texting or calling those telephone numbers receive an alternate number to call to lodge a Do Not Call request during regular business hours.

46.     There can be no question that, based on the facts as pled here, the Defendant either failed to place the Plaintiff's number on its internal do not call list, or does not maintain such a list to begin with.

47.     At minimum, the fact that the Plaintiff's texted "no" but the messages continued lend to the conclusion that the Defendant does not maintain any procedures for having an internal do not call list, for otherwise, the Plaintiff's "no" message would have been honored.

48.     Essentially, in this respect, the Plaintiff pleads a variation of the doctrine of *res ipsa*

Complaint

10

*loquitor*, as such "no" requests are typically not dishonored absent some negligent or willful conduct on the part of the Defendant.

49. The Plaintiff does not presently know the precise technical reason why her "no" messages were dishonored, but pleads that she will be able to uncover the same through discovery, including expert discovery.

50. The Plaintiff did not ask for the text messages.

51. Because they were sent to encourage the purchase of the Defendant's partner college programs that it was hired to market for, the text messages were telemarketing.

52. Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

53. A reasonable seller would investigate into the reasons why they would be sending messages to numbers on the National Do Not Call Registry, let alone to those who did not request them as an initial matter and asked them to stop.

54. Plaintiff's privacy has been violated by the above-described telemarketing calls/text messages.

55. Plaintiff never provided his consent or requested these messages.

56. In fact, as illustrated above, the Plaintiff revoked her consent to receive the messages, but the messages continued afterwards.

57. The aforementioned messages that were sent to the Plaintiff were unwanted.

58. The messages were non-consensual encounters.

59. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed.

60. In addition, the messages occupied their telephone storage space, rendering them

Complaint

unavailable for legitimate communication and other legitimate uses, including while driving, working, and performing other critical household tasks for which storage is required.

## CLASS ACTION ALLEGATIONS

61. <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Classes (the "Classes") defined as follows:

>**National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing text message or call from or on behalf of Defendant, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
>**Internal Do Not Call Class**: All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) who had previously asked for the calls to stop or for a copy of Defendant's Do Not Call Policy and (4) within the four years prior to the filing of the Complaint.
>
>**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did not transmit caller identification information that included either CPN or ANI and the Defendant's or telemarketer's name, (b) did not transmit a valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, (4) within the four years prior to the filing of the Complaint.

62. Excluded from the Classes are counsel, Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

63. The Classes, as defined above, are identifiable through telephone records and telephone number databases.

64. The potential members of the Classes likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

65. Individual joinder of these persons is impracticable.

Complaint

12

66. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

67. Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the class members.

68. Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

69. This class action complaint seeks injunctive relief and money damages.

70. There are numerous questions of law and fact common to Plaintiff and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

   a. Whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

   b. Whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls;

   c. Whether Defendant made calls to Plaintiff and members of the Internal Do Not Call Class after having received a stop request;

   d. Whether Defendant made calls in violation of the TCPA's Caller ID provisions; and

   e. Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

Complaint

71. Plaintiff's claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

72. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class, she will fairly and adequately protect the interests of the Class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

73. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant, or any of its agents which discovery might reveal were also involved in the claims at issue.

74. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interests of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant is small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

75. Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate

Complaint

on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

76. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

77. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

78. Defendant's violations were negligent, willful, or knowing, including because the messages continued after the Plaintiff texted "no."

79. As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

80. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's

Complaint

15

behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d))
### (On Behalf of Plaintiff and the Internal Do Not Call Registry Class)

81.  Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

82.  The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

83.  Defendant's violations were negligent, willful, or knowing, including because the messages continued after the Plaintiff texted "no."

84.  As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf's, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

## THIRD CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Telemarketing Caller ID Class)

85.  Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

Complaint

86. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

87. It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

88. Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without transmitting the name of the telemarketer, despite such option for transmission of accurate CNAM information being available by its carrier, by calling without transmitting CPN or ANI, or by calling while transmitting non-compliant CPN or ANI.

89. These violations were willful or knowing.

90. As a result of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

91. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

Certification of the proposed Classes;

Appointment of Plaintiff as representative of the Classes;

Appointment of the undersigned counsel as counsel for the Classes;

An order enjoining Defendant and/or any of its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, as applicable, from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

An award to Plaintiff and the Classes of damages, as allowed by law; and

Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Plaintiff,
By Counsel,

Dated: November 22, 2025

s/Andrew Roman Perrong
Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Lead Attorney for Plaintiff and the Proposed Class